UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT OBY and SUSAN OBY, | No. 2:16-cv-01008-MCE-CKD |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| CLEAR RECON CORPORATION; SELECT PORTFOLIO SERVICING, INC; JPMORGAN CHASE; and DOES 1 through 50, inclusive, | |
| Defendants. | |

On April 4, 2016, Plaintiffs Robert Oby and Susan Oby ("Plaintiffs") filed this action in state court on grounds that Defendants JPMorgan Chase Bank, N.A., sued erroneously as JP MORGAN CHASE, ("Chase"), Select Portfolio Servicing, Inc. ("SPS"), and Clear Recon Corporation ("Clear Recon") committed various violations of California's Homeowners' Bill of Rights ("HBOR") by prematurely instituting foreclosure proceedings against Plaintiffs' home when loan modification requests made by Plaintiffs remained pending. Plaintiffs also allege that Defendants violated California's Unfair Competition Law ("UCL") and are liable for common law negligence under state law. Chase removed the case to this Court on May 11, 2016 on diversity of citizenship grounds pursuant to 28 U.S.C. § 1332.

On May 26, 2016, this Court granted Plaintiffs' application for a Temporary Restraining Order, and Plaintiffs subsequently moved for a preliminary injunction preventing Defendants from foreclosing on their home. That Motion (ECF No. 18) is now before the Court for adjudication, and for the reasons set forth below, it will be DENIED.[1]

## BACKGROUND

Plaintiffs refinanced their home, located at 324 Prewett Drive in Folsom, California in early 2005. The resulting April 4, 2005 Promissory Note shows Plaintiffs' lender as Fremont Investment & Loan ("Fremont"). See Defendant Chase's Request for Judicial Notice ("RJN"), Ex. B.[2] The Deed of Trust, as subsequently recorded by Fremont on April 15, 2004, permitted the Trustee to initiate nonjudicial foreclosure and sell the property in the event of a default by Plaintiffs. Id. at Ex. C, pp. 1-2. The Deed of Trust further permitted assignment of Plaintiffs' loan to other servicers, with any transferee accorded the same right to enforce the Promissory Note and corresponding Deed of Trust.

On February 28, 2011, Plaintiffs' loan was assigned by Fremont to Bank of America, National Association as successor by merger to LaSalle Bank National Association. Id. at Ex. D. Plaintiffs' note was later assigned to Chase, and that assignment was recorded on June 1, 2013. Defendant SPS concurrently became the loan servicer at that point. Decl. of Gabriel Ruzzi, ¶ 4. Clear Recon was also substituted as Trustee under the Deed of Trust.

On February 4, 2016, Clear Recon recorded a Notice of Trustee's Sale on Plaintiffs' property after they defaulted on their loan obligations. Pls.' Compl., ¶ 15, Ex. A. According to Plaintiffs, however, they had submitted a completed loan

---

[1] Having concluded that oral argument was not of material assistance, the Court submitted this matter on the briefs in accordance with Local Rule 230(g).

[2] Chase's Request for Judicial Notice (ECF No. 12) was submitted in conjunction with Chase's concurrently pending Motion to Dismiss (ECF No. 11) and was granted.

2

modification application to Chase "in early 2015" and allegedly had in fact "submitted a completed loan mitigation application several times over the past several years." Id. at ¶¶ 14, 29.  According to Plaintiffs, by recording the Notice of Trustee's sale on February 4, 2016 without acting on Plaintiffs' completed loan application, Defendants violated the HBOR.[3]

Chase's loan servicer, Defendant SPS, alleges that no loan modification documents had been received from Plaintiffs prior to the time the Notice of Trustee's Sale was recorded, and that accordingly its Notice of Trustee's Sale was permissible. See Ruzzi Decl., ¶ 6.  According to SPS, it received no loan modification documents until February 5, 2016, the date after the Notice was issued, and the documents it did receive at that point were incomplete.  Id. at ¶ 8.  On February 12, 2016, SPS sent Plaintiffs a letter notifying them that their loan modification application was incomplete and could not be evaluated until all required information was received.  Id. at ¶ 9, Ex. 1.  SPS' loan records thereafter indicate that it received two additional loan application documents, and had four different phone conversations with Plaintiffs about the shortcomings of the documents that had been submitted between February 12, 2016 and February 26, 2016. Id. at ¶¶ 10-13, 15-16.  SPS also sent Plaintiffs a second letter, on February 22, 2016, notifying them in writing that their loan application remained incomplete.  Id. at ¶ 14, Ex. 2.  After Plaintiffs' third submission of documents on February 26, 2016, however, SPS sent Plaintiffs additional correspondence dated March 1, 2016 which informed them that their loan modification application was then complete.

On March 3, 2016, after SPS had received Plaintiffs' complete application, Clear Recon issued a letter postponing the Trustee's Sale from its previously scheduled date of March 3, 2016 to April 7, 2016.  Pls.' Compl. at ¶ 16, Ex. B.  Thereafter, on March 10, 2016, SPS sent Plaintiffs a letter denying their request for loan modification.  Ruzzi

---

[3] Despite the Complaint's reference to "several" completed loan applications being submitted, the only evidence presented by Plaintiffs concerns the application ultimately denied on March 10, 2016, and consequently that is the only application considered in this Memorandum and Order.

3

1    Decl., ¶ 18, Ex. 4.[4]  SPS subsequently sent another letter, dated March 24, 2016,
2    continuing the foreclosure sale to April 14, 2016, a date more than 30 days after its
3    March 10, 2016 denial of Plaintiffs' application to modify.
4        In the meantime, as indicated above, Plaintiffs filed the present action on April 4,
5    2016 in state court in an effort to stop the impending foreclosure.  They claim that
6    Defendants engaged in impermissible dual-tracking by proceeding with the foreclosure
7    while at the same time considering a loan modification application.  On April 6, 2016,
8    Plaintiffs obtained a temporary restraining order precluding Defendants from "selling,
9    transferring, conveying, foreclosing upon [or] evicting" Plaintiffs, either directly or
10   indirectly, from their home.  Decl. of Erin Stratte, Ex. C.  The state court concurrently
11   scheduled a hearing on Plaintiffs' request for a preliminary injunction for April 27, 2016.
12   On May 11, 2016, Defendant Chase removed the lawsuit to this Court on diversity of
13   citizenship grounds at a point apparently before any ruling had been made as to the
14   propriety of the preliminary injunction request in state court.
15       Following assignment to the undersigned, Plaintiffs proceeded to move for a
16   temporary restraining order in federal court on grounds that SPS had continued the
17   Trustee's Sale to June 16, 2016 despite the state court's prohibition against proceeding
18   with the foreclosure.  Based on those allegations, as well as Plaintiffs' claim that
19   Defendants continued to offer loan modification despite SPS' active pursuit of
20   foreclosure, the Court granted Plaintiffs' request for temporary restraining order by
21   Memorandum and Order filed May 25, 2016 (ECF No. 14).  Plaintiffs then filed the
22   instant Motion for Preliminary Injunction on June 3, 2016.
23   ///
24   ///
25   ///

---

[4] The Court recognizes Plaintiff Robert Oby's unilateral claim that he "believed" this letter was issued in error.  Aside from arguing that additional information should have been provided in the letter, however, there is no indication either in Mr. Oby's Declaration or in the papers as to the basis for any such conclusion, and the Court is not persuaded at this juncture that the letter was mistakenly sent.

## STANDARD

A preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 690 (2008).  "[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits." McCormack v. Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012).  A plaintiff seeking a preliminary injunction must establish that he is (1) "likely to succeed on the merits;" (2) "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "an injunction is in the public interest."  Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008).  "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied." Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (citing Winter, 555 U.S. at 22).  "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"  Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)).  A district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief."  Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and shows that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiffs' favor.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

///

///

**ANALYSIS**

### A.   Probability Of Success On The Merits

In analyzing the propriety of preliminary injunction relief in this matter, the Court first turns to whether Plaintiffs have shown a likelihood that they will succeed on the merits of their claims. Plaintiffs claim that Defendants violated the HBOR, and specifically its provisions as codified at Civil Code §§ 2923.6 and 2924.11. As indicated above, Plaintiffs further allege that Defendants are liable in negligence for their actions in foreclosing on their home, and that their actions also constituted unfair or deceptive business practices and consequently violated UCL § 17200. Upon considering the evidence now presented, the Court does not believe that Plaintiffs have shown they are likely to succeed on any of their claims.

California Civil Code § 2923.6(c) prevents a mortgage service provider from recording a Notice of Trustee's sale while a completed loan modification application is pending,[5] stating in pertinent part as follows:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary or authorized agent shall not record a notice of sale, or conduct a trustee's sale, while the complete first lien loan modification is pending.

Plaintiffs' claim that they submitted a completed loan application prior to Clear Recon's recordation of the Notice of Trustee's Sale and accordingly fall within the protection of § 2923.6(c). The evidence as produced by Defendants belies that contention. As indicated above, Defendants have produced evidence, in the form of both correspondence and contemporaneous notes of telephone conversations, that their Notice of Trustee's Sale was recorded at a point well before Plaintiffs had submitted the documents necessary for a completed loan application. Moreover, to the extent

---

[5] While Plaintiffs also appear to cite § 2924(a)(6) for the same proposition (see Pls.' Reply, 3:24-25), that statute mandates that no entity other than a holder of the beneficial interest under the mortgage can initiate foreclosure proceedings. It has nothing to do with loan modification.

6

1  Plaintiffs' Motion suggests that SPS violated § 2923.6(e) that allegation is no more
2  persuasive.  Subdivision (e) of the statute provides that if a loan modification is denied,
3  the servicer or trustee shall not conduct a trustee's sale, if a Notice has already
4  recorded, until 31 days after the borrower has been notified in writing of the denial.
5  Here, once Plaintiffs did submit a completed loan application, SPS continued the
6  Trustee's Sale until April 14, 2016, more than 31 days after its March 10, 2016 denial of
7  Plaintiffs' loan modification request.  That action satisfied the statutory mandate, and
8  Plaintiffs' apparent contention that § 2923.6(c) requires a party to cancel or rescind a
9  Notice of Default or Notice of Trustee's Sale is at odds with the plain language of the
10 statute.[6]

11      Plaintiffs' claim that SPS violated § 2924.11(f) of the HBOR is no more
12 persuasive.  According to Plaintiffs, SPS has run afoul of that section by "charging late
13 fees or other delinquency related fees while a completed loss mitigation application has
14 been submitted by the borrower." Pls.' Compl., ¶ 32.  As SPS points out, however,
15 § 2924.11(f) prohibits only the *collection* of late fees while a loan modification application
16 is being considered, and does not proscribe simply *charging* fees to delinquent
17 borrowers. The statute states:

> The mortgage servicer shall not **collect** any late fees for periods during which a complete first loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised. (emphasis added)

22 The fact that § 2924.11(f) prohibits only the collection, as opposed to the charging of
23 fees, has been confirmed by pertinent case law.  See, e.g., Davis v. U.S. Bank Nat'l
24 Ass'n, No. CV 15-01572 SJO (JPRx), 2015 WL 2124938 at * 5 (C.D. Cal. May 6, 2015)
25 ("Section 2924.11 prohibits only the **collection** of late fees during the pendency of a

---

[6] Plaintiffs also claim that continuing the Trustee's Sale, and not cancelling the foreclosure documents entirely, violated the terms of the state court's restraining order of May 25, 2015.  That order, like the temporary restraining order issued by this Court, prohibited "selling, foreclosing, conveying or foreclosing upon" Plaintiffs' property, but did not prohibit simply continuing an already established date.

7

1  loan modification application . . . Because Plaintiff does not allege that Defendant
2  **collected** late fees while his completed Application was pending . . . the Court GRANTS
3  the Motion as to Plaintiff's § 2924.11 claim.") (emphasis in original).  Here there are no
4  allegations that SPS tried to collect late fees from Plaintiffs while their loan modification
5  application was pending, and therefore § 2924.11(f) appears to be inapplicable.

6  Plaintiffs' negligence claim is no more persuasive.  "[A]s a general rule, a financial
7  institution owes no duty of care to a borrower when the institution's involvement in the
8  loan transaction does not exceed the scope of its conventional role as a mere lender of
9  money."  Nymark v. Heart Fe. Savings  Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991).
10 Additionally, in the context of a loan modification request like that at issue here, the court
11 in Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 67 (2013) confirmed
12 that such a request is simply "the renegotiation of loan terms, which falls squarely within
13 the scope of a lending institution's conventional role as a lender of money."   As a
14 consequence, the Lueras court found no "common law duty of care to offer, consider, or
15 approve a loan modification, or to explore and offer foreclosure alternatives."  Id. at 68;
16 see also Jerviss v. Select Portfolio Servicing, Inc., No. 2:15-cv-01904, 2015 WL 7572130
17 at *4-5 (E.D. Cal. Nov. 25, 2015 (following Lueras as representing the majority position
18 that the loan modification process itself does not ordinarily give rise to a duty of care
19 sounding in negligence).

20 Here, the evidence presented shows that the loan modification application at
21 issue was repeatedly rejected by SPS as incomplete, and that once all needed
22 documentation was submitted on or about February 26, 2016, the modification request
23 was denied about ten days later on March 10, 2016.  There is no evidence that SPS
24 mishandled Plaintiffs' application prior to that denial other than Plaintiffs' own
25 unsupported allegations.  While the Court recognizes that affirmative mishandling of a
26 loan application once it has accepted can in some instances give rise to negligence
27 liability, no such circumstances appear to be present here.  In Alvarez v. BAC Home
28 Loans Servicing, L.P., 228 Cal. App. 4th 941 (2014), for example, the plaintiffs alleged

8

that defendants relied on inaccurate information belied by the contents of their own file and, after working for defendants over two years on obtaining the modification, cited reasons for denying the application that were patently false. Id. at 945. The Alvarez court found that in the face of those particular facts that a duty of care in processing a loan modification may be established. Plaintiffs here have offered nothing close to the circumstances confronted by the court in Alvarez against SPS here. Plaintiffs have consequently shown no likelihood that they will succeed in establishing that SPS owed them a duty of care sounding in negligence.

Finally, because Plaintiffs' unfair competition claim is apparently premised on SPS' alleged violation of the HBOR and its alleged negligence, Plaintiffs have failed to show a likelihood of success as to that claim, as well. A plaintiff asserting an unfair competition claim must allege an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A business practice is unlawful "if it is forbidden by any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003). "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." Korea Supply Co. v. Lockheed Martin, 29 Cal. 4th 1134, 1143 (2003). With respect to the "unfair" prong of the statute, that simply means "any practice whose harm to the victim outweighs its benefits." Saunders v. Superior Court, 27 Cal. App. 4th 832, 839 (1994). Finally, to be actionable as fraudulent under the UCL, the test is not whether the common law tort of fraud has been established but rather whether "members of the public are likely to be deceived." Korea Supply Co.., 29 Cal. 4th at 1151.

By alleging that Defendants' foreclosure is in violation of California law and incorporating by reference Plaintiffs' previous claims that the HBOR had been violated, reliance on the "unlawful" prong is foreclosed for the same reasons Plaintiffs' HBOR claims are not likely to succeed. See, e.g., Consumer Defense Group v. Rental Housing Industrial Members, 137 Cal. App. 4th 1185, 1220 (2006) (dismissing UCL claim when predicate claims were also dismissed). Moreover, since Plaintiffs have alleged no

1 predicate conduct which would satisfy either the "unfair" or "fraudulent" prongs of the
2 statute beyond the allegations sounding in either HBOR violations or negligence, neither
3 of which appear likely to succeed on the merits, no showing for preliminary injunctive
4 relief has been made on those grounds, either.

5    Because Plaintiffs have not shown that there are serious questions as to the
6 merits of their claims, let alone a likelihood of success on those claims, the Court need
7 not address the remaining factors of irreparable harm, balance of the equities and public
8 interest. See Yuk Lai Wycliffe Chan v. Lothridge, No. C 94-1827 SAW, 1994 WL 411723
9 (N.D. Cal. Aug. 5, 1994).  The Court will nonetheless briefly address those issues, since
10 they do nothing to advance the propriety of Plaintiffs' request for preliminary injunctive
11 relief.

12    **B.    Irreparable Harm**

13    Defendant Chase's concurrently filed Motion to Dismiss, which will be addressed
14 by separate Order, requests that the Court judicially notice certain documents pertaining
15 to Plaintiffs' loan.  That request was unopposed and the judicially noticed documents are
16 equally germane to this motion.  They show that beginning in May of 2008, Plaintiffs
17 began failing to pay the required monthly installments due on their loan.  Chase's RJN,
18 ECF No. 12, Ex. E.  As a result, the then Trustee under the Deed of Trust recorded a
19 Notice of Default on July 23, 2008 which reflected an amount owed of $17,466.72. Id. at
20 Ex. E.  After another two-and-a-half years of nonpayments, by November 29, 2010
21 Plaintiffs were behind over $88,114.23 in monthly principal payments—excluding late
22 fees. Id.  Then, after Clear Recon substituted in as Trustee, it recorded another Notice
23 of Default for $41,757.06 on April, 14, 2015. Id. at Ex. G.  By the time Clear Recon
24 recorded the subject Notice of Sale on February 4, 2016, it had already recorded two
25 previous Notices due to continuing missed payments.

26    While Plaintiffs claim they will be subject to irreparable harm if they lose their
27 home with its unique properties, and be rendered homeless as a result, that alleged
28 irreparable harm appears to be occasioned by their own habitual failure to keep their

10

loan current.  Plaintiffs have not shown that the fault for that failure rests with anyone other than themselves.  As such, Plaintiffs have not identified any impending irreparable harm attributable to wrongful acts on Defendants' part.

### C.     Balance Of The Equities And The Public Interest

Plaintiffs argue that the balance of equities as well as considerations of public interest favor issuing a preliminary injunction that upholds the procedural requirements applicable to non-judicial foreclosures under the HBOR.  As set forth above, however, the Court has concluded that Plaintiffs have not demonstrated a likelihood that they will succeed on those claims.  Consequently, these factors also do not support issuance of a preliminary injunction in this matter.

## CONCLUSION

Based on all the foregoing, Plaintiffs' Motion for Preliminary Injunction (ECF No. 18) is DENIED.

IT IS SO ORDERED.

Dated:  March 10, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE