UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT OBY and SUSAN OBY, | No. 2:16-cv-01008-MCE-CKD |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| CLEAR RECON CORPORATION; SELECT PORTFOLIO SERVICING, INC; JPMORGAN CHASE; and DOES 1 through 50, inclusive, | |
| Defendants. | |

On April 4, 2016, Plaintiffs Robert Oby and Susan Oby ("Plaintiffs") filed this action in state court on grounds that Defendants JPMorgan Chase Bank, N.A., sued erroneously as JP Morgan Chase, ("Chase"), Select Portfolio Servicing, Inc. ("SPS"), and Clear Recon Corporation ("Clear Recon") committed various violations of California's Homeowners' Bill of Rights ("HBOR") by prematurely instituting foreclosure proceedings against Plaintiffs' home when Plaintiffs' loan modification requests remained pending. Plaintiffs also allege that Defendants violated California's Unfair Competition Law ("UCL") and are liable for common law negligence under state law.  Chase removed the case to this Court on May 11, 2016 on diversity of citizenship grounds pursuant to 28 U.S.C. § 1332.

Chase and SPS have now both filed Motions to Dismiss the claims alleged against them on grounds that Plaintiffs have failed to state a claim upon which relief can be granted, and that they accordingly are entitled to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  As set forth below, those Motions are GRANTED in part and DENIED in part.[1]

## BACKGROUND

Plaintiffs refinanced their home, located at 324 Prewett Drive in Folsom, California in early 2005.  The resulting April 4, 2005 Promissory Note shows Plaintiffs' lender as Fremont Investment & Loan ("Fremont").  See Defendant Chase's Request for Judicial Notice ("RJN"), Ex. B.[2]  The Deed of Trust, as subsequently recorded by Fremont on April 15, 2004, permitted the Trustee to initiate nonjudicial foreclosure and sell the property in the event of a default by Plaintiffs.  Id. at Ex. C, pp. 1-2.  The Deed of Trust further permitted assignment of Plaintiffs' loan to other servicers, with any transferee accorded the same right to enforce the Promissory Note and corresponding Deed of Trust.

On February, 28, 2011, Fremont assigned Plaintiffs' loan to Bank of America, National Association as successor by merger to LaSalle Bank National Association.  Id. at Ex. D.  Plaintiffs' note was later assigned to Chase, and that assignment was recorded on June 1, 2013.  It appears that Defendant SPS became the loan servicer at that point, and Clear Recon was substituted as Trustee under the Deed of Trust.

///

---

[1] Having concluded that oral argument was not of material assistance, the Court submitted this matter on the briefs in accordance with Local Rule 230(g).

[2] Chase's request, made pursuant to Federal Rule of Evidence 201, is GRANTED.  The Court can judicially notice the contents of public records, including recorded documents relating to real property.  The documents for which Chase seeks judicial notice are, with the exception of an affidavit filed by Plaintiff Robert Oby in this case (for which no judicial notice is needed), all documents filed with the Sacramento County Recorders' Office concerning Plaintiffs' property.

On February 4, 2016, Clear Recon recorded a Notice of Trustee's Sale on Plaintiffs' property after they defaulted on their loan obligations. Pls.' Compl., ¶ 15, Ex. A. According to Plaintiffs, however, they had submitted a completed loan modification application to Chase "in early 2015" and allegedly had in fact "submitted a completed loan mitigation application several times over the past several years." Id. at ¶¶ 14, 29. According to Plaintiffs, by recording the Notice of Trustee's sale on February 4, 2016 without acting on Plaintiffs' completed loan application, Defendants violated the HBOR.

On March 3, 2016, Clear Recon issued a letter postponing the Trustee's Sale from its previously scheduled date of March 3, 2016 to April 7, 2016. Pls.' Compl. at ¶ 16, Ex. B. Thereafter, on March 10, 2016, SPS sent Plaintiffs a letter denying their request for loan modification. Pls.' Compl., Ex. C. SPS subsequently sent another letter, dated March 24, 2016, continuing the foreclosure sale to April 14, 2016. See SPS' Request for Judicial Notice, Ex. 1.[3]

In the meantime, as indicated above, Plaintiffs filed the present action on April 4, 2016 in state court in an effort to stop the impending foreclosure. They claim that Defendants engaged in impermissible dual-tracking by proceeding with foreclosure while at the same time considering a loan modification application. On April 6, 2016, Plaintiffs obtained a temporary restraining order precluding Defendants from "selling, transferring, conveying, foreclosing upon [or] evicting" Plaintiffs, either directly or indirectly, from their home. Decl. of Erin Stratte, Ex. C, ECF No. 18-4. The state court concurrently scheduled a hearing on Plaintiffs' request for a preliminary injunction for April 27, 2016. On May 11, 2016, Defendant Chase removed the lawsuit to this Court on diversity of citizenship grounds at a point apparently before any ruling had been made as to the propriety of the preliminary injunction request in state court.

///

---

[3] SPS' request that the Court judicially notice the March 24, 2016 letter pursuant to Federal Rule of Evidence 201 is unopposed and is hereby granted.

Following assignment to the undersigned, Plaintiffs proceeded to move for a temporary restraining order in federal court on grounds that SPS had continued the Trustee's Sale to June 16, 2016 despite the state court's prohibition against proceeding with the foreclosure. Based on those allegations, as well as Plaintiffs' claim that Defendants continued to offer loan modification despite SPS' active pursuit of foreclosure, the Court granted Plaintiffs' request for temporary restraining order by Memorandum and Order filed May 25, 2016 (ECF No. 14). Plaintiff proceeded to file a Motion for Preliminary Injunction on June 3, 2016, and Defendants Chase and SPS each filed Motions to Dismiss on May 26, 2016.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

4

1  pleading must contain something more than "a statement of facts that merely creates a
2  suspicion [of] a legally cognizable right of action")).
3    Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket
4  assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and
5  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard
6  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of
7  the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &
8  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to
9  relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their
10 claims across the line from conceivable to plausible, their complaint must be dismissed."
11 Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge
12 that actual proof of those facts is improbable, and 'that a recovery is very remote and
13 unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
14   A court granting a motion to dismiss a complaint must then decide whether to
15 grant leave to amend.  Leave to amend should be "freely given" where there is no
16 "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
17 to the opposing party by virtue of allowance of the amendment, [or] futility of the
18 amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
19 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
20 be considered when deciding whether to grant leave to amend).  Not all of these factors
21 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
22 carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
23 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
24 "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,
25 Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,
26 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.
27 1989) ("Leave need not be granted where the amendment of the complaint . . .
28 constitutes an exercise in futility . . . .")

## ANALYSIS

### A. Negligence

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." Nymark v. Heart Fe. Savings Loan Assn., 231 Cal. App. 3d 1089, 1096 (1991).  Additionally, in the context of a loan modification request like that at issue here, the court in Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 67 (2013) confirmed that such a request is simply "the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money."  As a consequence, the Lueras court found no "common law duty of care to offer, consider, or approve a loan modification, or to explore and offer foreclosure alternatives."  Id. at 68; see also Jerviss v. Select Portfolio Servicing , Inc., No. 2:15-cv-01904, 2015 WL 7572130 at *4-5 (E.D. Cal. Nov. 25, 2015) (following Lueras as representing the majority position that loan modification process itself does not ordinarily give rise to a duty of care sounding in negligence).

The Court recognizes that a loan servicer's malfeasance once it accepts a loan modification may in certain instances give rise to potential negligence liability.  In Alvarez v. BAC Home Loans Servicing, L.P., 228 Cal. App. 4th 941 (2014), for example, the plaintiffs alleged that defendants relied on inaccurate information belied by the contents of their own file and, after working with defendants for over two years on obtaining the modification, defendants cited reasons for denying the application that were patently false.  Id. at 945.  The Alvarez court found that in the face of those particular facts a duty to use reasonable care in processing a loan modification may be established.  Id. at 948-49.  Here, however, Plaintiffs have offered no analogous allegations concerning SPS that would bring them under what appears to be Alvarez' factually constrained holding.  Absent such allegations, Plaintiffs have not taken their

loan modification request outside the general rule that loan modification is part of a lender's conventional duties and consequently does not give rise to negligence liability. As a result, their First Cause of Action alleging negligence fails as against SPS.

With regard to Defendant Chase, there are virtually no allegations at all. Aside from the fact that Chase apparently owned Plaintiffs' loan, there are no allegations concerning what specific role, if any, Chase had in the foreclosure actions taken by its servicer and trustee in early 2016. Plaintiffs simply generally aver that "Defendants" (which presumably include Chase) "owed Plaintiffs a general duty of care." Pls.' Compl., ¶ 19. Such allegations, without more, fail to put Chase on notice as to why a duty of care should be imposed. See, e.g., Khan v. Citimortgage, Inc., 975 F. Supp. 2d 1127, 1147 (E.D. Cal. 2013) ("The Complaint insufficiently attempts to allege defendants' cognizable duty of care let alone its breach."). Additionally, any wrongdoing alleged in the Complaint surrounding the modification of Plaintiffs' loan appears to relate solely to the servicer, SPS, and consequently Plaintiffs have not shown how Chase breached its duty even were the Court to assume that an actionable duty was present. Consequently, Plaintiffs have also failed to state any viable negligence claim against Defendant Chase, and Chase's Motion to Dismiss Plaintiffs' First Cause of Action is also well taken.

### B.  Violations of HBOR

California Civil Code § 2923.6(c) prevents a mortgage service provider from recording a Notice of Trustee's Sale while a completed loan modification application is pending, stating in pertinent part as follows:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary or authorized agent shall not record a notice of sale, or conduct a trustee's sale, while the complete first lien loan modification is pending.

Plaintiffs claim that they submitted a completed loan application prior to Clear Recon's recordation of the Notice of Trustee's Sale on February 4, 2016, and before

SPS issued its denial of the application on March 10, 2016. According to Plaintiffs, by recording the Notice of Sale at the same time their loan application request was pending, Defendants engaged in dual tracking in violation of § 2923.6(c).[4]  See Pls.' Compl., ¶¶ 14-15, 20. Plaintiffs also allege, at least on the face of their Complaint, that they submitted "completed loan mitigation application[s] several times over the past several years" yet received no denial other than SPS' letter dated March 10, 2016. On a motion to dismiss, the Court must accept these allegations as true and, if true, they are enough to state a violation of § 2923.6 against SPS as set forth in the Second Cause of Action.[5]

With respect to Defendant Chase, however, there are no charging allegations that Chase as opposed to SPS had any role in violating § 2923.6. Plaintiffs do not allege, for example, that Chase, as opposed to its servicer, SPS, had any role in failing to act upon Plaintiffs' completed loan applications before proceeding to default. Accordingly, Plaintiffs have not pled a viable claim for violation of § 2923.6 against Chase, and Chase's Motion to Dismiss the Second Cause of Action against it is granted.

Plaintiffs go on to allege, in their Third Cause of Action, that SPS also violated § 2924.11(f) of the HBOR. That claim is not well taken. According to Plaintiffs, SPS has run afoul of that section by "charging late fees or other delinquency related fees while a completed loss mitigation application has been submitted by the borrower." Pls.' Compl., ¶ 32. As SPS points out, however, § 2924.11(f) prohibits only the collection of late fees while a loan modification application is being considered, and does not proscribe simply charging fees to delinquent borrowers. The statute states:

---

[4] SPS claims that by ultimately continuing the Trustee's Sale to a point more than 30 days after it denied Plaintiffs' loan modification request, it "cured" any dual tracking violation. For purposes of the present motion, however, which simply tests the sufficiency of Plaintiffs' allegation that violations of § 2923.6 did occur, that continuance is not dispositive, particularly since Plaintiffs' complaint also identifies the submission of several different loan modification requests, the disposition of which remain unclear.

[5] The Court notes that Plaintiffs' Second Cause of Action also appears to allege a violation of § 2923.6(g). That section, however, provides only that a servicer is not obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated, absent a "material change" in their financial circumstances. Because Plaintiffs' Complaint as written does not appear to implicate that section in any way, § 2923.6(g) provides no additional support for Plaintiffs' Second Cause of Action.

> The mortgage servicer shall not **collect** any late fees for period during which a complete first loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised. (emphasis added)

Cal. Civ. Code § 2924.11(f). The fact that § 2924.11(f) prohibits only the collection, as opposed to the charging of fees, has been confirmed by pertinent case law. See, e.g., Davis v. U.S. Bank Nat'l Ass'n, No. CV 15-01572 SJO (JPRx), 2015 WL 2124938, at * 5 (C.D. Cal. May 6, 2015) ("Section 2924.11 prohibits only the **collection** of late fees during the pendency of a loan modification application . . . Because Plaintiff does not allege that Defendant **collected** late fees while his completed Application was pending . . . the Court GRANTS the Motion as to Plaintiff's § 2924.11 claim.") (emphasis in original). Here there are no allegations that SPS tried to collect late fees from Plaintiffs while their loan modification application was pending, and therefore § 2924.11(f) appears to be inapplicable. Consequently, Plaintiffs' Third Cause of Action fails against SPS. Moreover, because there are no charging allegations that suggest the statute is in any way more applicable to Defendant Chase, the Third Cause of Action fails as to Chase as well.

### C. Violations of UCL

A plaintiff asserting an unfair competition claim must allege an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "A business practice is unlawful "if it is forbidden by any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003). "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." Korea Supply Co. v. Lockheed Martin, 29 Cal. 4th 1134, 1143 (2003). With respect to the "unfair" prong of the statute, that "simply means any practice whose harm to the victim outweighs its benefits." Saunders v. Superior Court, 27 Cal. App. 4th 832, 839 (1994).

///

///

1  Finally, to be actionable as fraudulent under the UCL, the test is not whether the
2  common law tort of fraud has been established but rather whether "members of the
3  public are likely to be deceived." Korea Supply Co..,29 Cal. 4th at 1151.
4  Plaintiffs allege that because they have identified violations of the HBOR, those
5  violations satisfy the "unlawful" prong of the UCL.  Because the Court has concluded
6  above that Plaintiffs have stated a plausible claim against Defendant SPS for violation of
7  § 2923.6, at least for pleadings purposes, Plaintiffs' UCL claim against SPS survives
8  pleadings scrutiny at this time.
9  SPS nonetheless claims, however, that even if Plaintiffs have stated a UCL claim,
10  they have alleged no damages and consequently cannot satisfy the injury in fact
11  requirement of the statute. See Cal. Bus. & Prof. Code § 17204.  According to SPS,
12  because it has continued any Trustee's Sale on the property, Plaintiffs have necessarily
13  suffered no damages.  As Plaintiffs point out, however, they have sustained attorney's
14  fees to halt the alleged wrongful foreclosure, and SPS does not dispute that said fees
15  can be recovered under the UCL.  Because the prayer to Plaintiffs' Complaint requests
16  such fees, Plaintiffs have successfully alleged potential damages.  Moreover, at least on
17  the basis of the Complaint, Plaintiffs assert other "money damages, including, but not
18  limited to, excessive interest accumulation, negative amortization, loss of equity,
19  destruction of credit standing…. [i]n an amount to be shown at trial. Pls.' Compl., ¶ 38.
20  Given those allegations, which must be accepted as true, the Court cannot rule out that
21  Plaintiffs have sustained actionable damage as a result of SPS' conduct.
22  With respect to Defendant Chase, however, because the Court has found that
23  Plaintiffs have failed to plead any wrongdoing against Chase, there is no predicate
24  misconduct upon which any UCL claim against Chase can rest.  Accordingly, while the
25  Court denies SPS' request for dismissal of the Fourth Cause of Action against SPS, it
26  grants Chase's request to dismiss that claim.
27  ///
28  ///

**CONCLUSION**

Based on all the foregoing, Defendant SPS' Motion to Dismiss (ECF No. 15) is GRANTED as to Plaintiffs' First and Third Causes of Action, but otherwise DENIED as to Plaintiffs' remaining claims against SPS.  Defendant Chase's Motion to Dismiss (ECF No. 11) is GRANTED in full inasmuch as the Complaint fails to state a viable claim against Chase at this time.[6]  Plaintiffs may file a First Amended Complaint, should they choose to do so, not later than twenty (20) days after the date this Memorandum and Order is electronically filed.

IT IS SO ORDERED.

Dated:  March 10, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[6] The Court recognizes Plaintiffs' request, as stated in their Opposition to Chase's Motion, to state a new cause of action for violation of California Civil Code § 2924.17 based upon documents submitted by Chase in its Request for Judicial Notice.  The Court declines to rule on that request at this time.  Should Plaintiffs wish to pursue any such claim they can do so by their amended pleading.